# EXHIBIT A

## Ted Donovan

| | |
|---|---|
| **From:** | adrienne@woodslawpc.com |
| **Sent:** | Friday, April 20, 2018 9:08 AM |
| **To:** | Kevin Nash |
| **Cc:** | rpacella@pacella-law.com |
| **Subject:** | RE: Fwd: JLF 114 Liberty |

Kevin,

As Mr. Pacella is eager to close, I wanted to follow up on the status of the APA - have you been able to obtain signatures? As discussed, the check will be messengered to your offices as soon as we receive the complete execution copy.

Additionally, I thought it might be helpful to confirm the numbers for section 3 as follows:

Bid - $6,200,000

Buyer's Premium: $248,000 (4% of $6,200,000)

Purchase Price: $6,448,000

Initial Deposit: $620,000

Additional Deposit: $282,720

Total Deposits: $902,720.00 (14% of $6,448,000)

Balance of Purchase Price Payable at Closing: $5,545,280 ($6,448,000 - $902,720)

Kindly advise on the status, and if you have any questions please reach out.


Best regards,

Adrienne Woods, Esq.

The Law Offices of Adrienne Woods, P.C.
459 Columbus Avenue, #314
New York, New York 10024
T: (212) 634-4459
F: (212) 634-4462

Confidentiality Notice This message (and any attachments) is intended only for use by named recipient(s) and may contain legally privileged attorney-client communications and/or confidential or proprietary information, or may contain attorney work product, all of which is exempt from disclosure under applicable law. If you received this message in error or are not one of the named recipient(s), do not review, disseminate, distribute or copy this message including attachments, immediately notify sender by reply e-mail and delete this message and all attachments from your device or drive. Thank you.

# LAW OFFICES OF RICHARD B. PACELLA

61 BROADWAY, SUITE 1310
NEW YORK, NY 10006
(212) 509-4600
FACSIMILE (212) 509-0406

**VIA Hand Delivery**

April 17, 2018

Kevin J. Nash, Esq.
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway
22nd Floor
New York, NY 10036

**Re: Bid Package for 114 Liberty Street Apt. 8, New York, NY**

Dear Mr. Nash:

Please find enclosed the Bid Package that I hereby submit in regard to the above captioned property ("Property") which contains the following:

1. An Asset Purchase Agreement executed by me.
2. A letter dated April 12, 2018 from Fidelity Brokerage Services LLC stating the current unrestricted balance in one of my accounts.
3. A bank check No. 205103877, dated April 13, 2018, in the amount of Six Hundred Twenty Thousand ($620,000) Dollars made payable to Goldberg Weprin Finkel Goldstein LLP.

I confirm that at the Auction on April 18, 2018 I will make an irrevocable bid in an amount of at least Six Million Two Hundred Thousand ($6,200,000) Dollars, plus payment of the 4% Buyers Premium, to consummate a sale transaction for a cash purchase price with respect to the Property. Such bid, or any subsequent bid I make at the Auction, shall remain irrevocable until and through the Sale Hearing if my bid is accepted as the high bid. I have had the opportunity to conduct due diligence and do not require further due diligence.

If you have any questions, please don't hesitate to let me know.

Very truly yours,

*[signature]*

Richard B. Pacella

RBP/tt

Encls.

## REAL ESTATE PURCHASE AGREEMENT

THIS REAL ESTATE PURCHASE AGREEMENT (this "Agreement"), made and entered into as of _____, 2018, by and between JLF 114 Liberty LLC (the "Seller"), having an address at 114 Liberty Street, New York, N.Y., and Richard Pacella, having an address at 61 Broadway, Suite 1310, New York, NY 10006 (hereinafter referred to as "Buyer" or "Purchaser").

**WHEREAS,** Seller, together with James Andrew Fernandez, are currently debtors in possession in Chapter 11 bankruptcy cases before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), under Case Nos. 17-12594 (SHL) and 18-10608 (SHL), respectively (the "Bankruptcy Cases").

**WHEREAS,** Seller is required to sell the condominium apartment located at 114 Liberty Street, New York, NY, Apt. No. 8 (the "Apartment" or "Unit") to either CREIF Lender LLC (the "Lender") based on its credit bid or to a third party purchaser pursuant to so-ordered stipulation dated March 1, 2018 entered in the James Andrew Fernandez Chapter 11 case [ECF #31] (the "Sale Stipulation").

**WHEREAS,** in furtherance of the Sale Stipulation, the Debtor is proceeding with a sale of the Apartment on the terms and conditions set forth below.

**NOW, THEREFORE,** the parties hereto, in consideration of the premises and of the mutual representations, warranties and covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, agree as follows:

## DEFINED TERMS.

The following terms, as used in this Agreement and all exhibits and riders hereto, shall have the following meanings:

> "Affiliate" means, with respect to any Person, an entity which controls or is controlled by such Person or is under common control with such Person. For the purposes of this definition, "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of the Person in question, whether by the ownership of voting securities, agreement or otherwise.
>
> "Apartment" or "Unit" means Unit No. 8 in the building located at 114 Liberty Street York, New York, as more particularly described on Exhibit A attached hereto and incorporated herein by reference.
>
> "Buyer" means the person or entity identified on the first page of this Agreement, together with any permitted assignee or designee.
>
> "Governmental Body" means any government, quasi-governmental entity, or other governmental or regulatory body, agency or political subdivision thereof of any nature or any self-regulatory agency, whether foreign, federal, state or local, or any

agency, branch, department, official, entity, instrumentality or authority thereof, or any court or arbitrary (public or private).

"<u>Parties</u>" means Seller and Buyer (each individually is a "<u>Party</u>").

"<u>Person</u>" or "<u>Persons</u>" means any individual, corporation, limited liability company, limited partnership, general partnership, association, joint stock company, joint venture, estate, trust (including any beneficiary thereof), unincorporated organization, government or any political subdivision thereof, governmental unit or authority or any other entity.

"<u>Sale or Confirmation Order</u>" means an order of the Bankruptcy Court approving this Agreement and authorizing the sale of the Unit and personal property and fixtures described in Section 1(B) below by the Seller to the Buyer, free and clear of liens, claims, taxes and adverse interests of third parties, pursuant to 11 U.S.C. §§ 363(b) and (f), and 1123(a)(5)(D).

1. **SALE AND PURCHASE OF UNIT.**

    A.    **Unit:** Seller agrees to sell and convey, and Purchaser agrees to purchase and acquire (the "Sale"), the Unit in the building **("Building")** known as the **114 Liberty Street** Condominium **("Condominium")** and located at 114 Liberty Street, New York, New York, together with a **8.7312%** percent undivided interest in the Common Elements and the personal property and fixtures described in Section 1(B) below, upon and subject to the terms and conditions set forth herein. The Unit shall be as designated in the Declaration of Condominium Ownership (as the same may be amended from time to time, the **"Declaration"**) of the Condominium recorded in New York County, New York or by the By-Laws (as the same may be amended from time to time, the **"By-Laws"**) of the Condominium.

    B.    **Personal Property:**

(a)    The Sale includes all of Seller's right, title and interest, if any, in and to:

    (i) the refrigerators, freezers, ranges, ovens, built-in microwave ovens, dishwashers, washing machines, clothes dryers, cabinets and counters, lighting and plumbing fixtures, chandeliers, air conditioning equipment, venetian blinds, shades, screens, storm windows and other window treatments, wall-to-wall carpeting, bookshelves, switchplates, door hardware and mirrors, built-ins and articles of property and fixtures attached to or appurtenant to the Unit, except those listed in subpara. 2(b), all of which included property and fixtures and represented to be owned by Seller, free and clear of all claims, liens and encumbrances.

    (ii) Any Storage Units relating to the Apartment.

(b)    Excluded from this Sale are:

    (i) Debtor's furniture and furnishings (other than as specifically provided in this Contract).



(c)   The property referred to in subparagraph 1.B.(a)(i) and (ii) may not be purchased if title to the Unit is not conveyed hereunder.

2.   **REPRESENTATIONS, WARRANTIES AND COVENANTS.**

Seller represents warrants and covenants as follows:

(a)   Seller is the sole owner of the Unit and personal property described above in Section 1(B) and, subject to Bankruptcy Court approval, has the full right, power and authority to sell, convey and transfer the same;

(b)   James Andrew Fernandez ("Fernandez") and Laura Fernandez (with Fernandez, "Seller's Members") are the sole members of, and own all membership interests in, Seller;

(c)   The common charges (excluding separately billed utility charges) for the Unit on the date hereof are **$ 2,551 per month;**

(d)   Seller has not received any notice of any intended assessment or increase in common charges;

(e)   The real estate taxes for the Unit for the current fiscal year are approximately **$47,800 per annum (with abatement);**

(f)   Seller is not a "sponsor" or a nominee of a "sponsor" under any plan of condominium organization affecting the Unit;

(g)   All refrigerators, freezers, ranges, dishwashers, washing machines, clothes dryers and air conditioning equipment included in this Sale will be in working order at the time of Closing, normal wear and tear accepted;

(h)   Neither Seller nor either of Seller's Members is a "foreign person," as that term is used in the FIRPTA rules and regulations of the Internal Revenue Code ("IRC") including IRC §§ 897 and 1445.

3. **Purchase Price:** The purchase price ("Purchase Price") is $_____ million, which includes: (a) a bid in the amount of $_____ million; and (b) a four percent (4%) Buyer's premium in the amount of $_____ payable as follows:

(i) $620,000 ("Initial Deposit") prior to the Auction by bank check, the receipt of which is hereby acknowledged, to be delivered to Goldberg Weprin Finkel Goldstein LLP at 1501 Broadway, 22nd Floor, NY, NY 10036 and held in escrow by Goldberg Weprin Finkel Goldstein LLP in accordance with the approved bidding procedures as modified by Lender or Lender's counsel;

(ii) $_____ ("Additional Deposit") payable one day after the Auction by personal check made out to Goldberg Weprin Finkel Goldstein LLP and delivered to their offices at 1501 Broadway, 22nd Floor, NY, NY 10036 by no later than close of business on April 19, 2018 if the undersigned is the successful bidder; and

(iii) $_____ constituting the balance of the Purchase Price (the Purchase Price less the Initial Deposit and the Additional Deposit), by wire transfer or official bank check (except as otherwise provided in this Agreement) on the delivery of the deed as hereinafter provided.

**4. Closing of Title:** The closing documents referred to below shall be delivered, and payment of the balance of the Purchase Price shall be made, at the closing of title ("Closing"), to be held after entry of the Sale or Confirmation Order (which Order shall be effective immediately) and no later than May 16, 2018 (time of the essence) unless extended by Lender, in Lenders' sole discretion; provided, however, that Lender shall not extend or cause the Closing to be extended for a period of more than twenty (20) days. Closing shall be held at the offices of Goldberg Weprin Finkel Goldstein, LLP, 1501 Broadway, 22nd Floor, NY, NY 10036, or at the office of Purchaser's lending institution or its counsel.

**5.    Closing Documents and Considerations.**

(a) At the Closing, and subject to Bankruptcy Court approval and entry of the Sale or Confirmation Order, Seller shall deliver to Purchaser the following:

(i)    Bargain and Sale deed without covenants ("Deed"), conveying to Purchaser title to the Unit, together with its undivided interest in the Common Elements attributable to or used in connection with the Unit appurtenant thereto, free and clear of all claims, liens, taxes and encumbrances other than Permitted Exceptions pursuant to the Sale or Confirmation Order in accordance with 11 U.S.C. §§ 363(b) and (f), and 1123(a)(5)(D);

(ii)    To the extent not otherwise addressed by the Sale or Confirmation Order, Seller shall deliver to Purchaser (1) a resolution of its board of directors authorizing the delivery of the Deed and (2) a certificate executed by an officer of such corporation certifying as to the adoption of such resolution and setting forth facts demonstrating that the delivery of the Deed is in conformity with the requirements of applicable law;

(iii)    A Statement by the Condominium or its managing agent reflecting the amount, if any, of outstanding or common charge arrears or other assessments then due and payable by Seller to the Condominium as of the Closing;

(iv)    All keys to the doors of, and mailbox for, the Unit;

(v)    New York City Real Property Transfer Tax Return, and New York State Real Estate Transfer Tax Return, as applicable, prepared, executed and acknowledged by Seller in proper form for submission even if the Sale transaction is exempt from payment of transfer taxes under 11 U.S.C. §1146(a);

(vi)    Purchaser, Seller and each of Seller's Members shall comply with IRC §§ 897, 1445 and the regulations thereunder as same may be amended ("FIRPTA"). If applicable, Seller and each of Seller's Members shall execute and deliver to Purchaser at Closing a Certification of Non-Foreign Status ("CNS"), a copy of which is annexed hereto as <u>Exhibit C</u>, or a Withholding Certificate from the IRS. If Seller and each of Seller's Members fail to deliver a CNS or a Withholding Certificate, Purchaser shall withhold from the balance of the Purchase Price, and remit to the IRS, such sum as may be required by law. Seller, each of Seller's Members and Lender hereby waive any right of action against Purchaser on account of such withholding and remittance. This paragraph 5(a)(vi) shall survive Closing; and

(vii)    Affidavit that a single station smoke detecting alarm device is installed pursuant to New York Executive Law §378(5).

(b) All personal property and fixtures described in Section 1(B) of this Agreement.

### 6. Closing Adjustments:

(a) The following adjustments shall be made as of 11:59 P.M. of the day before the Closing:

(i)    Real estate taxes and water charges and sewer rents, if separately assessed, on the basis of the fiscal period for which assessed, except that if there is a water meter with respect to the Unit, apportionment shall be based on the last available reading, subject to adjustment after the Closing, promptly after the next reading is available; provided, however, that in the event real estate taxes have not, as of the date of Closing, been separately assessed to the Unit, the real estate taxes shall be apportioned on the same basis as provided in the Declaration or By-Laws or, in the absence of such provision, based upon the Unit's percentage interest in the Common Elements.

(ii)    Common charges, and any other monthly charges or assessments affecting the Unit (if any) of the Condominium; and

(iii)    If fuel is separately stored with respect to the Unit only, the value of fuel stored with respect to the Unit at the price then charged by Seller's supplier (as determined by a letter or certificate to be obtained by Seller from such supplier), including any sales taxes.

For the avoidance of doubt, any and all of the foregoing charges, taxes and expenses will be the sole responsibility of Seller to the extent that they were incurred or accrued prior to the Closing.

(b)    Any errors or omissions in computing closing adjustments shall be corrected.

(c)    If the Unit is located in the City of New York, the "customs in respect to title closings" recommended by The Real Estate Board of New York, Inc., as amended and in effect on the date of Closing, shall apply to the adjustments and other matters therein mentioned, except as otherwise provided herein.  Any such expenses to be paid by Buyer will be limited to $2,000 in the aggregate.



7. **Possession:** Seller shall, prior to the Closing, remove from the Unit all furniture, furnishings and other personal property not included in this Sale pursuant to Section 1(B) of this Agreement, and shall deliver exclusive possession of the Unit at the Closing, vacant, broom-clean and free of tenancies or other rights of use or possession, normal wear and tear excepted. Any personal property not so removed shall be deemed abandoned to Buyer.

8. **Access:** Seller shall permit Purchaser to have the right of access to the Unit between the entry of the Sale or Confirmation Order and the Closing for the purpose of inspecting the same at reasonable times and upon reasonable prior notice (by telephone, email or otherwise).

9. **Risk of Loss; Casualty:**

(a)     The risk of loss or damage to the Unit and the personal property and fixtures included in this Sale, by fire or other casualty, until the Closing, is assumed by Seller for damages, but without any obligation of Seller to repair or replace any such loss or damage unless Seller or Lender elects to do so as hereinafter provided. Seller or Lender shall notify Purchaser of the occurrence of any such loss or damage to the Unit or the personal property included in this Sale within three (3) days after such occurrence or by the date of Closing, whichever first occurs, and by such notice shall state whether or not Seller or Lender elects to repair or restore the Unit and/or the personal property, as the case may be. If Seller or Lender elect to make such repairs and restorations, Seller or Lender's notice shall set forth an adjourned date for the Closing, if needed, which shall be not more than 20 days after the date of the giving of Seller's notice. If either Seller or Lender does not elect to make such repairs and restorations, Purchaser shall have the following options:

(i) To declare this Agreement cancelled and of no further force or effect, whereupon all deposits will be refunded and the parties shall have no further claims against the other; or

(ii) To complete the purchase in accordance with this Agreement without reduction in the Purchase Price, except as provided hereafter. If Seller carries hazard insurance covering such loss or damage, Seller shall turn over to Purchaser at the Closing the net proceeds actually collected by Seller under the provisions of such hazard insurance policies to the extent that they are attributable to loss of or damage to any property included in this Sale, less any sums theretofore expended by Seller in repairing or replacing such loss or damage or in collecting such proceeds; and Seller shall assign (without recourse to Seller) Seller's right to receive any additional insurance proceeds which are attributable to the loss of or damage to any property included in this Sale. If insurance does not completely repair the damage and/or replace the loss, as applicable, Seller shall pay up to $50,000 of the amount necessary to repair damage and/or replace property.

(b)     Notwithstanding the foregoing, damages of less than $50,000 shall be assumed by the Seller or Lender without the option provision above.



**10. Broker:** Pursuant to the Bidding Procedures Order, Buyer is required to pay Maltz Auctions a Buyer's Premium equal to 4% of the amount of the successful bid, not including the Buyer's Premium. The only commission that will be paid by Maltz Auctions is to a third party licensed Real Estate Broker who registers the Successful Purchaser in accordance with the Broker Participation Agreement and has received confirmation of receipt and acknowledgment of valid registration by Maltz Auctions. The commission for such registered real estate broker will be one (1%) of the Successful Bid. Purchaser shall indemnify the Seller, Lender and Maltz Auctions against any costs, claims or expenses (including reasonable attorneys' fees) arising out of any claims by any other broker retained by Buyer in connection with this transaction. Seller, Lender and Maltz Auctions shall indemnify Buyer against any costs, claims or expenses (including reasonable attorneys' fees) arising out of any claims by any broker, other than Maltz Auctions, retained by Seller, Lender and/or Maltz Auctions in connection with this transaction.

**11.    EXPENSES.**

To the extent not otherwise provided for in other provisions of this Agreement, the expenses incurred in connection with this Agreement and the Closing contemplated herein shall be paid as follows:

A.    Each Party shall pay its own legal and other costs and expenses of negotiating and preparing this Agreement.

B.    The parties expect that this transaction shall be exempt from payment of any city or state transfer taxes in accordance with Section 1146 (a) of the Bankruptcy Code; provided, however, that in the event the transaction is not exempt, the Purchaser shall be responsible to pay all transfer taxes.

C.    Seller shall pay for the filing fees in connection with its recording of the Deed.

D.    Buyer shall pay for all costs incurred for title searches, municipal searches and preparation of the title commitment and title report from the Title Company, and all related costs (including extended coverage and any endorsements which Buyer elects to obtain) relating to issuance of the title policy.

**12.    BANKRUPTCY MATTERS AND CLOSING.**

A.    Seller represents that the Apartment is wholly-owned by the Seller, which is a debtor-in-possession in one of the Bankruptcy Cases and that consummation of the Sale contemplated herein remains subject to Bankruptcy Court approval and the terms of the Sale Stipulation. Accordingly, the obligations of the parties under this Agreement are, and remain, subject to the entry of the Sale or Confirmation Order approving this Agreement and providing, among other things, that the Sale of the Apartment to the Buyer shall be free and clear of all claims, taxes liens, encumbrances and interests. The Buyer hereby agrees and reconfirms that it is bound by and subject to all of the terms and conditions of the Bidding Procedures approved by the Bankruptcy Court except as provided herein.



13.   **OBJECTIONS TO TITLE.**

   A.   After the Auction, Buyer, if the successful bidder, shall promptly order an examination of title and shall cause a copy of the title report to be forwarded to Seller and Lender's respective attorneys upon receipt. The parties shall be entitled to a reasonable adjournment or adjournments of the Closing for up to five (5) days to remove any defects in or objections to title (other than Permitted Exceptions) noted in such title report and any other defects or objections (other than Permitted Exceptions) which may be disclosed on or prior to the Closing.

   B.   If Seller shall be unable to convey title to the Apartment at the Closing in accordance with the provisions of this Agreement, Buyer, nevertheless, may elect to accept such title as Seller may be able to convey without any credit against the monies payable at the Closing or liability on the part of Seller or Lender.

   C.   Any unpaid taxes, condominium charges, assessments, water charges and sewer rents, together with the interest and penalties thereon, which Seller is obligated to pay and discharge, shall be paid in accordance with the terms of the Sale or Confirmation Order. Notwithstanding the foregoing, Buyer shall have no responsibility for any of said charges, taxes or expenses that were incurred or accrued prior to the Closing.

14.   **REPRESENTATIONS OF BUYER.**

   A.   Buyer represents to Seller as follows and to the extent applicable:

   i.   Buyer has the full power and authority to enter into and perform under this Agreement.

   ii.  This Agreement constitutes the valid and binding obligation of the Buyer enforceable in accordance with its terms.

   iii. No actions.   To Buyer's knowledge, there is no action, suit, arbitration, unsatisfied order or judgment, government investigation or proceeding pending against Buyer which, if adversely determined, will materially interfere with the consummation of the transaction contemplated by this Agreement.

   v.   Anti-Terrorism Laws. Buyer is not in violation of any laws relating to terrorism or money laundering, including, without limitation, Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001 and relating to Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism and/or the Uniting and Strengthening America by Providing Appropriate Tools



Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-56).

## 15. **CONDITIONS TO BUYER'S OBLIGATIONS.**

Buyer's obligation to consummate the purchase of the Apartment contemplated by this Agreement and to deliver the Purchase Price is subject to satisfaction of the following conditions:

i. Seller shall have obtained Bankruptcy Court approval of this Agreement pursuant to the Sale or Confirmation Order reasonably acceptable in form and substance to Buyer. Among other terms, the relevant order shall: (i) convey the Unit and the personal property and fixtures described in Section 1 of this Agreement to Buyer free and clear of all liens, claims, encumbrances and interests pursuant to 11 U.S.C. §§ 363(b) and (f) and 1123(a)(5)(D); (ii) provide Buyer with all protections of a good faith purchaser pursuant to 11 U.S.C. §§ 363(m); and (iii) provide a waiver of the 14-day stay otherwise applicable under Federal Rule of Bankruptcy Procedures 6004(h).

ii. Seller shall have completed all of the deliveries required of Seller under this Agreement described in Section 5 above and otherwise.

iii. A reputable title insurance company shall be willing to insure title to the Apartment pursuant to an ALTA Owner's Policy of Title Insurance in the amount of the Purchase Price at regular rates and without additional premium, subject only to the Permitted Exceptions.

iv. Buyer shall not be responsible for any tax or charge imposed by the Condominium with respect to the sale/transfer of the Unit, including a charge by the condominium sometimes colloquially referred to as a "flip tax".

v. Seller shall have obtained all such documents and permissions from the board of the Condominium as are necessary to consummate the Sale and transfer of the Unit to Buyer or, in the alternative, the Bankruptcy Court shall have entered an order approving the Sale and transfer of the Unit to Buyer over the Condominium board's objection, if any, with no additional actions or requirements being necessary on the part of Buyer to take title and possession to the Unit over any objection of the Condominium.

vi Purchaser, Seller and each of Seller's Members shall comply with IRC §§ 897, 1445 and the regulations thereunder known as FIRPTA. If applicable, Seller and Seller's Members shall each execute and deliver to Purchaser, at Closing, an accurately completed and executed CNS or a Withholding Certificate from the IRS. If Seller and/or any of Seller's Members fail to deliver a CNS or a Withholding Certificate, Purchaser shall withhold from the balance of the Purchase Price, and remit to the IRS, such sum as may be required by law. Seller, Seller's Members and Lender hereby waive any right of action against Purchaser on account of such withholding and remittance. This paragraph 15(vi) shall survive Closing.

vii. All of Seller's Representations and Warranties described in Section 2 of this Agreement are true and correct as of Closing.

If each of the conditions to Seller's obligation to consummate the Closing as set forth in Section 15 above have been fulfilled, and the Closing contemplated by this Agreement shall not occur as a result of the failure of Seller to consummate the transaction, then Seller shall be deemed to be in default under this Agreement, and Lender or Buyer shall have the right to seek specific performance in the Bankruptcy Court as the sole remedy.

### 16. DEFAULT BY BUYER.

If this Agreement fails to close, following completion of all conditions set forth herein, by the Closing as set forth in Section 4 of this Agreement, because of Buyer's default due to circumstances not strictly beyond Buyer's control and not otherwise attributable, in whole or in part, to Seller, Lender or Maltz Auctions it shall constitute an event of Buyer's default ("Buyer's Default"). In the event of a Buyer's Default, Buyer, Maltz Auctions, Lender and Seller agree that Lender and Seller may, as their sole and exclusive remedy against Buyer for Buyer's Default, terminate this Agreement by written notice to Buyer and in such event Lender shall be entitled to retain $310,000 of the deposit as liquidated damages for Buyer's Default (the "Liquidated Damages") in full satisfaction of any and all claims Lender, Maltz Auctions and Seller may have against Buyer. Any such funds may remain with Lender, as opposed to Seller, on account of Lender's allowed claim against Seller. Maltz Auctions, Lender, Seller and Buyer agree that the Liquidated Damages are not punitive or a penalty but that the amount of such Liquidated Damages has been determined by the parties to be just, fair and reasonable. For the avoidance of any doubt, Buyer's liability for any and all damages in connection with its actions or inactions arising from this transaction, shall be limited to Liquidated Damages as set forth in this Section 16 and will give rise to no other or further liability of Buyer, nor any claims or causes of action of or by Seller, Lender or Maltz Auctions against Buyer.

### 17. COUNTERPARTS.

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Delivery of an executed signature page of this Agreement by facsimile or electronic transmission by any of the parties hereto shall be effective as delivery of a manually executed counterpart hereof.

### 18. GOVERNING LAW AND JURISDICTION.

This Agreement shall be governed in accordance with the laws of the State of New York, without application of the conflict of laws principles thereof. The Lender, Seller and Buyer hereby irrevocably and unconditionally submit to the exclusive jurisdiction of the Bankruptcy Court, with respect to any action or proceeding arising out of or relating to this Agreement.

### 19. NO RECORDATION.

No party shall record this Agreement or any memorandum, notice or affidavit hereof, or any other similar document.

### 20. ENTIRE AGREEMENT.

This Agreement constitutes the entire agreement between the Lender, Seller and Buyer relating to the Sale of the Apartment. A modification of this Agreement must be in writing signed by the Lender, Seller and Buyer.

**21. NOTICES.**

Whenever the terms of this Agreement provide for notice from one party to the other, such notice shall be in writing and shall be given by at least one of the following methods: personal delivery (deemed received upon delivery); overnight delivery by an overnight courier service (e.g., Fedex, UPS, etc.) (deemed received one (1) business day after deposit if marked for delivery on the next business day); facsimile transmission with the original being sent by regular mail (deemed received upon completion of the facsimile transmission); or by certified mail, return receipt requested (deemed received three (3) business days after deposit). Such notice shall be given to the parties at the address listed on the first page hereof and their respective attorneys. The notices shall be addressed as follows:

| | |
|---|---|
| To Seller: | James A. Fernandez<br>114 Liberty Street. Apt. 8<br>New York, NY 10006 |
| with a copy to: | Paul A. Rachmuth, Esq<br>265 Sunrise Highway, Ste. 62<br>Rockville Centre, N.Y. 11570<br>Email: paul@pareso.com |
| To Lender: | 1841 Broadway, Suite 811<br>New York, NY 10023<br>Attn: Paul Salib<br>Email: psalib@castellanre.com |
| With a copy to: | Goldberg Weprin Finkel Goldstein LLP<br>1501 Broadway, 22nd Floor<br>New York, New York 10036<br>Attention: Kevin J. Nash<br>Email: knash@gwfglaw.com |
| To Buyer: | Law Offices of Richard B. Pacella<br>61 Broadway, Suite 1310<br>New York, NY 10006<br>Attn: Richard B. Pacella<br>Email: rpacella@pacella-law.com |
| With a copy to: | The Law Offices of Adrienne Woods, P.C.<br>459 Columbus Avenue, #314<br>New York, New York 10024<br>Email: adrienne@woodslawpc.com |



**IN WITNESS WHEREOF**, the parties hereto have signed this Agreement and initialed each page on the day, month and year first set forth above.

**Lender:**

By: _/s/ illegible_ ,
Name: Paul Salib
Title: _illegible_

**Seller:**

By: _____
Name:
Title:

**Buyer:**

By: _/s/ Richard Tabella_
Name:
Title:

Escrow Agent:
_/s/ illegible_

**Maltz Auctions:**

By: _____
Name:
Title:

IN WITNESS WHEREOF, the parties hereto have signed this Agreement and initialed each page on the day, month and year first set forth above.

**Lender:**

By:_____,

    Name:

    Title:

**Seller:**

By:_____

    Name:

    Title:

**Buyer:**

By: /s/ Richard Tarella

    Name:

    Title:

**Maltz Auctions:**

By: /s/ [signature]

    Name:

    Title: